MONGEON, plaintiff in error, v. PEOPLE.

*Manslaughter — repeal of statute — saving clause — Laws 1869, chap. 631 — Laws 1872, chap. 181 — general repealing act.*

Plaintiff was indicted, tried and convicted of manslaughter in the second degree, under Laws 1869, chap. 631, § 1, relating to abortions. The act was committed March 15, 1872, and the indictment, trial and conviction were had April 24, 1872. On the 6th of April, 1872, a law was passed (Laws 1872, chap. 181), changing the character of the offense and increasing the punishment. By § 5 of such law all acts and parts of acts inconsistent therewith were repealed, and by § 6 it was directed to take effect immediately.

*Held,* that the provision in question of the act of 1869 was inconsistent with and was repealed by the act of 1872; and there being no saving clause in the latter act, the repeal was applicable to offenses committed prior to its passage as well as to prospective offenses, and under the provisions of that act plaintiff would not be liable to indictment for the offense he had committed.

But the provision of § 6 of the general repealing act of 1828 (3 R. S. 155; 1 Stat. at Large, 72), that "no offense committed, and no penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed,

Mongeon v. People.

shall be affected by such repeal," etc., is applicable to the law of 1869 ; and such statute continued in effect as to the offense and penalty, and the indictment, conviction and judgment against plaintiff were right.

ERROR to St. Lawrence sessions to review conviction for manslaughter. The facts sufficiently appear in the opinion.

*B. H. Vary*, for plaintiff in error.

*L. W. Russell*, for defendants in error.

PARKER, J. This case has been brought into this court by writ of error to the St. Lawrence sessions.

On the 24th day of April, 1872, the plaintiff in error was indicted in that court for manslaughter in the second degree, under section 1, chapter 631 of the Laws of 1869, which is as follows:

" § 1. Any person who shall administer to any woman with child, or prescribe for any such woman, or advise or procure her to take any medicine, drug, substance or thing whatever, or shall use or employ any instrument or other means whatever, with intent thereby to produce the miscarriage of any such woman, unless the same shall have been necessary to preserve her life, shall, in case the death of such child or of such woman be thereby produced, be deemed guilty of manslaughter in the second degree."

On the same day on which he was indicted, he was tried in the same court and convicted, and sentenced to imprisonment in a State prison for the term of seven years.

The record shows the crime to have been committed on the 15th day of March, 1872.

On the 6th day of April, 1872, chapter 181 of the Laws of 1872 was passed, in which are the following provisions, viz. :

" § 1. Any person who shall hereafter willfully administer to any woman with child, or prescribe for any such woman, or advise or procure her to take any medicine, drug, substance or thing whatever, or shall use or employ, or advise or procure her to submit to the use or employment of, any instrument or other means whatever, with intent thereby to produce the miscarriage of any such woman, unless the same shall have been necessary to preserve her life, or that of such child, shall, in case the death of such child or of such woman be thereby produced, be deemed guilty of a felony, and upon conviction shall be punished by imprisonment in a State

prison for a term not less than four years nor more than twenty years.

"§ 5. All acts and parts of acts inconsistent with this act, are hereby repealed.

"§ 6. This act shall take effect immediately."

No bill of exceptions was made, and the first question in the case is, whether or not section 1 of the act of 1869, above quoted, was so far unrepealed by the said act of 1872, that the plaintiff in error could be indicted · and punished under it for the offense committed by him on the 15th of March, 1872.

Section 1 of the act of 1872 covers the entire ground of section 1 of the act of 1869, with some additions, and changes the whole character and effect of the forbidden acts (so that they no longer constitute manslaughter in the second degree, punishable by imprisonment in the State prison for a term not less than four nor more than seven years) to that of a felony punishable in the State prison for a term not less than four nor more than twenty years.

There can be no doubt, therefore, that the whole section of the first act is repealed. Clearly, as that section stood in the act of 1869, it is inconsistent with section 1 of the act of 1872. The whole scope of the section in the first act was to make certain acts manslaughter in the second degree. This is all changed by the second act, and the same acts are no longer manslaughter, as before, but a general felony, to which is annexed a more severe punishment. Both sections cannot stand together, but that in the former act, being inconsistent with that in the latter, is, by section 5 of the latter act, expressly repealed.

It is urged by the learned counsel for the defendants in error, that, inasmuch as the act of 1872 is, by its terms, wholly prospective and applicable only to future offenses, it could not be inconsistent with the former act so far as it was applicable only to prior offenses, and hence that the effect of the repeal of such act, or any part of it, was only upon its application to future offenses.

But, as we have seen, the first section of the former act is, in itself, *clearly inconsistent* with the first section of the latter, and the repeal is in terms of "all acts and parts of acts *inconsistent* with" the latter act. From the time of the passage of the latter act, therefore, the first section of the former act was, by the terms of the latter, expressly abrogated. There being no reservation, or saving clause in the new act, as to offenses theretofore committed,

the repeal was absolute, and cannot be construed into a limited repeal, a repeal with a saving clause not contained in it. The repeal here does not rest upon implication, though that would be sufficient in this case, for "when a new statute covers the whole subject-matter of an old one, and adds offenses, and prescribes different penalties from those enumerated in the old law, it is by necessary implication a repeal of the former statute." Potter's Dwarris, citing *Norris* v. *Croker*, 13 How. (U. S.) 427, which is precisely this case.

But the repeal here is express, and cannot, by construction, be made less than an absolute and total repeal — there is no ground appearing by the whole act indicating such intent — and hence there is no warrant for taking it in a limited sense. Nothing, either, can be inferred in favor of its being a limited repeal, from any supposition that the legislature could not have intended to permit a criminal guilty of a grave offense to escape punishment.

"In the enactment of statutes the rule of interpretation is, in respect to the intention of the legislature, that, when the language is explicit, the courts are bound to seek for the intention in the words of the act itself, and they are not to be at liberty to suppose, or to hold that the legislature intended any thing different from what their language imports." Potter's Dwarris, 146.

In *Hartung* v. *The People*, 22 N. Y. 97, Judge DENIO, in giving the opinion of the court, says: "By the terms of the statute (chap. 410, Laws of 1860) all those portions of the existing statutes which provided for the punishment of death on convictions for crime were repealed, *without any saving in respect to offenses already committed*," and he goes on (page 99) to discuss the question "whether the prisoner can be executed under the provisions of the Revised Statutes which were in force when the crime was committed, and when the trial and conviction took place, but which have since been repealed;" and after the citation of various authorities, showing that, unless the repealing act contains a saving clause in reference to offenses already committed, no conviction can be had therefor under the repealed statute, he proceeds (page 103) to say: "But it scarcely required an examination of authorities to establish a principle so plain, upon reason, as that life cannot be taken under color of law, after the only law by which it was authorized to be taken has been abrogated by the law-making power." True, in that case he finds an additional reason for his conclusion, in the fact that the

repealing law itself expressly provides that offenders in the situation of the prisoner should not be punished under the law which was repealed. The conclusion, however, above announced had been reached independently of this provision. The reference to the provision is as follows : " But if the doctrine [that an offense cannot be punished under color of law, after the only law authorizing the punishment has been abrogated] was less clearly established by reason and authority, it would be the rule to be applied to this case, upon the concession of the statute of 1860 itself. In several of the cases which have been adjudged, and to which reference has been made, the immunity extended to the offender was the result of accident or inadvertence. It was apparent that, if the thought had occurred to the law makers, a saving clause, as to existing offenses, and especially as to prosecutions and convictions which had taken place, would have been added. Here, however, it is entirely clear that it was intended, by the law makers, that offenders in the situation of the plaintiff in error should not be punished under the law which was repealed," and then goes on to quote the section providing that such offenders should be punished " as if convicted of murder under this act."

The conclusion and holding of the court was in accordance with the authorities cited by it, which were approved. A reference to one or two of those authorities will be appropriate, as themselves are authorities upon this question. In *Rex* v. *McKenzie*, Russ. & Ry. 429, the prisoners were indicted for stealing privately from a shop goods of the value of five shillings. A statute of William III had made this felony without benefit of clergy ; but this act was repealed by an act of George IV, which took effect after the offense of the prisoners was committed. The repealing act also provided for the punishment of such offense thereafter committed by transportation for life. The court held " that a conviction could not be had under the repealed statute ; and it clearly could not under the provisions of the last act, which was only prospective in its operation." Again, in the *Commonwealth* v. *Marshall*, 11 Pick. 350, the defendant was indicted, under the statute, against disinterring dead bodies, passed in 1814. This statute was repealed upon a revision of the laws, in 1830. The act charged seems to have been an offense at common law, before either of the statutes were passed. The offense was committed during the existence of the first-mentioned act. The defendant confessed the indictment, and the question was,

Mongeon v. People.

what judgment should be rendered? The opinion of the court was given by Chief Justice SHAW, to the following effect: "The act cannot be punished as an offense at common law, for that was not in force during the existence of the statute ; nor by the statute of 1814, because it has been repealed *without any saving clause ;* nor by the statute of 1830, for the act was done before that statute was passed No judgment can, therefore, be rendered against defendant on this indictment."

The case of *Hartung* v. *The People,* then, may, I think, be considered an authority, in accordance with the line of authorities therein referred to, that an offense cannot be punished under color of law, after the only law authorizing the punishment has been repealed, without any saving clause as to offenses already committed. But if such conclusion of Judge DENIO is merely *obiter,* in that case, the authorities on which it is founded are sufficient to establish the doctrine, which, he says, is so clearly established by reason and authority, and they are conclusive of this case upon the point now under consideration; for if, when one, who had been indicted, tried and convicted before the repeal of the law prescribing the punishment for the offense, could not, after such repeal, be punished, much less could one be indicted, tried, convicted and sentenced, after the repeal of the only law authorizing such indictment, trial, conviction and punishment.

It is insisted, however, by respondent's counsel, that a general saving clause, applicable to this case, is contained in the general repealing act of 1828, and section 6 of that act is cited, which is as follows: "§ 6. No offense committed, and no penalty or forfeiture incurred previous to the time when *any* statutory provision *shall be repealed,* shall be affected by such repeal ; except that, when any punishment, forfeiture or penalty shall have been mitigated by the provisions of the Revised Statutes, such provision shall apply to and control any judgment to be performed after said statutes shall take effect, for any offenses committed before that time." 3 R. S. (1st ed.) 155 ; 1 Stat. at Large, 72.

I confess I am unable to see why this provision does not reach this case. It is general, and in its terms prospective ; not referring to the repeals made by that act ; for when the effect of such repeals is spoken of, they are indicated as follows: "The repeal of any statutory provision *by this act,*" or some equivalent expression, as in the next preceding section : "The repeal of any statutory provision

*by this act* shall not affect any act done," etc. But here the reference is, distinctly, to repeals thereafter to be made: "No offense committed, and no penalty or forfeiture incurred, *previous to the time when* any statutory provision *shall be repealed*, shall be affected by such repeal."

The language of the section clearly includes and is applicable to this case, and may be paraphrased and applied as follows: "The offense of manslaughter in the second degree under section 1 of chapter 631 of the Laws of 1869, committed previous to the time when said section shall be repealed, and the penalty incurred thereby shall not be affected by such repeal." The exception contained in the section, that "when any punishment, etc., shall have been mitigated by the provisions of the Revised Statutes, such provisions shall apply to and control any judgment to be pronounced, after the said statute shall take effect, for any offense committed before that time," is not inconsistent with the general and prospective effect given to the former part of the section by the above construction, and does not show that such former provision was intended to apply only to the repeals made by that act. In the absence of any authoritative construction to the contrary (and we are referred to none and find none), I think the one above given to the section correct. If neither the offense committed before the repeal, nor the penalty therefor are affected by the repeal, the effect is, that the statute against which the offense was committed continues in effect as to such offense and penalty as though not repealed.

In the case at bar, then, the indictment, conviction and judgment are all right, and there is no ground for reversing the judgment.

The judgment of the court of sessions should therefore be affirmed.

MILLER, P. J., and POTTER, J., concurred.

*Judgment affirmed.*